## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:23-CR-00074 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| MORRIS CARTER, III | ) | |
| | ) | |
| | ) | AUGUST 13, 2024 |

## MEMORANDUM OF DECISION RE: MOTION TO DISMISS THE INDICTMENT
## (ECF NO. 43)

Kari A. Dooley, United States District Judge:

Defendant Morris Carter III ("Carter" or "Defendant") was charged by indictment on April 26, 2023, with one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). The Indictment alleges that on or about February 19, 2023, Carter, having been previously convicted of several felonies, knowingly and intentionally possessed a firearm. ECF No. 1. Pending before the Court is Carter's motion to dismiss the Indictment based on the holding in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, (2022). Mot. to Dismiss, ECF No. 43 at 1; Def.'s Mem. in Supp., ECF No. 44 at 1. For the reasons set forth below, the motion is DENIED.

**Legal Standard**

"The dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. Raniere*, 384 F. Supp. 3d 282, 299 (E.D.N.Y. 2019) (quoting *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001)). The Federal Rules of Criminal Procedure permit a defendant to file a pretrial motion to dismiss based upon a defect in an indictment or in the initiation of the prosecution, provided "the basis for the motion is then reasonably available and the motion can be determined without a trial on the

merits." Fed. R. Crim. P. 12(b)(3). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Calhelha*, 456 F. Supp. 2d 350, 356–57 (D. Conn. 2006) (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)). "[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Levine*, 249 F. Supp. 3d 732, 738 (S.D.N.Y. 2017) (quoting *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)). "When deciding a motion to dismiss an indictment pursuant to Fed. R. Crim. Pro. 12(b), a court must accept all factual allegations in the indictment as true." *United States v. Kogan*, 283 F. Supp. 3d 127, 134 (S.D.N.Y. 2017) (quotation marks and citation omitted).

**Factual Background[1]**

As charged in the Indictment, Carter was previously convicted of five crimes "punishable by imprisonment for a term exceeding one year." Indictment, ECF No. 1, at 1. They are as follows: Conspiracy to Possess with Intent to Distribute 28 Grams or More of Cocaine Base, in violation of Title 21, United States Code, §§ 841 (a)(1) and 841 (b)(1)(B)(iii), on or about May 30, 2013; Carrying a Pistol without a Permit, in violation of Conn. Gen. Stat. § 29-35, on or about August 26, 2006; Assault on a Public Safety Officer, in violation of Conn. Gen. Stat. § 53a-167c, on or about May 12, 2008; Assault in the Second Degree, in violation of Conn. Gen. Stat. § 53a-60, on or about May 12, 2008; Possession of Narcotics, in violation of Conn. Gen. Stat.§ 21a-279, on or

---

[1] While the Court takes the Indictment as a whole and assumes its factual allegations to be true for purposes of deciding a motion to dismiss under Fed. R. Crim. P. 12(b)(1), *United States v. Litvak*, No. 3:13-CR-19 (JCH), 2013 WL 5740891, at *2 (D. Conn. 2013), the Government has provided additional background information as to events leading up to the Defendant's indictment. These facts are largely undisputed for purposes of this motion and to the extent any disputes exist, they need not be resolved on this motion.

about August 13, 2009; and Possession of Narcotics, in violation of Conn. Gen. Stat. § 21a-279, on or about July 15, 2010. *Id.* at 1–2.

The indictment alleges that, on February 19, 2023, in the District of Connecticut, Carter knowingly possessed two firearms, one Intratec 9mm Luger TEC-CD9 semi-automatic pistol and one Hi-Point Model JCP 40 S&W, .40 caliber semi-automatic pistol. *Id.* at 2. The Intratec pistol had an obliterated serial number. *Id.* Carter is charged in two counts, Count 1, Unlawful Possession of a Firearm by a Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and Count 2, Unlawful Possession of a Firearm with an Obliterated Serial Number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). *Id.*

In its Opposition to the Motion to Dismiss, the Government provides additional information describing the circumstances under which Carter is alleged to have possessed the firearms at issue. According to the Government's account, on or about February 19, 2023, Carter "got into an altercation with a man at a convenience store," and beat the other man with a firearm. Gov. Opp'n, ECF No. 47 at 1–2. Carter was subsequently pursued by police and threw two firearms out of the window of his car during that pursuit. *Id.* at 2. Police recovered the weapons and found Carter's DNA on one of them. *Id.*

**Discussion**

Carter argues that his possession of firearms is constitutionally protected by the Second Amendment, and any attempt to criminalize his possession is prohibited under the Supreme Court's holding in *Bruen*, 597 U.S. at 17. Def's. Mem. in Supp. at 1.[2] Carter brings both as-applied and facial challenges to 18 U.S.C. § 922(g)(1). *Id.* He argues that under *Bruen*, the Government

---

[2] Although seeking dismissal of the Indictment, Carter offers no argument under *Bruen* as to Count Two, charging unlawful possession of a firearm with an obliterated serial number.  Absent same, the Court does not further address this claim.

3

cannot "establish an adequate historical record of felon disarmament" *Id.* at 6. The Government argues in response that the Supreme Court's Second Amendment jurisprudence, including the recent decision in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), does not require it to prove historical tradition in the context of challenges to § 922(g)(1), that even if a historical analysis were required such an analysis would confirm § 922(g)(1)'s constitutionality, and that Carter's as-applied challenge also fails given his "extensive" criminal record. Gov. Opp'n. at 3.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Amendment enshrines an individual right to bear arms and "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. Subsequently, the Court extended *Heller's* holding to the states in *McDonald v. City of Chicago*, 561 U.S. 742 (2010). In both cases, the Court emphasized that its Second Amendment jurisprudence "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons…" *Id.* at 786 (quoting *Heller*, 554 U.S. at 626) (internal quotations omitted). A decade later, in *Bruen,* the Supreme Court clarified the test required for assessing Second Amendment challenges. Noting that lower courts had improperly "coalesced around" a "two-step" analysis for disposing of Second Amendment challenges that combined "history with means-end scrutiny," the Court held that the correct test must be "rooted in the Second Amendment's text, as informed by history" and that the government "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19.

Following *Bruen*, the Supreme Court decided *Rahimi*, a *Bruen*-based challenge to 18 U.S.C. § 922(g)(8). 144 S. Ct. 1889. Section 922(g)(8) "prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that he 'represents a credible threat to the physical safety of [an] intimate partner,' or a child of the partner or individual." *Id.* at 1894. The Court upheld § 922(g)(8)'s constitutionality, holding that it was analogous to founding-era "surety" and "going armed" laws, and therefore "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id*. at 1901.

After *Heller* and *McDonald*, but before *Bruen* and *Rahimi*, the Second Circuit Court of Appeals considered whether § 922(g)(1) violated the Second Amendment rights of a convicted felon who had been convicted under the statute for possessing a firearm and body armor. *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013). The *Bogle* Court held that while *Heller* and *McDonald* had developed more expansive interpretations of the Second Amendment, both opinions specified that they should not be interpreted to disturb existing prohibitions on the use of firearms by felons, and accordingly § 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons. *Id.*

The Government argues that nothing in *Bruen* undermined *Bogle's* core holding rendering that decision binding upon this Court. Gov. Opp'n at 4–5, 7. In contrast, Carter characterizes *Bogle* as a "one-paragraph decision which included no historical analysis and relied exclusively on dicta from pre-*Bruen* cases," and argues that *Bogle's* underpinnings in *Heller* and *McDonald* have been sufficiently thrown into question by *Bruen* as well as post-*Bruen* decisions by the Ninth, Third,

and Fifth Circuit Courts of Appeals.[3] Def.'s Mem in Supp. at 2; Def.'s Reply, ECF No. 49 at 3. The Court agrees with the Government.

*Bogle* did not incorporate the means-end test that was rejected by the *Bruen* Court. Indeed, *Bogle* expressly and exclusively relies on language from *Heller* and *McDonald* in upholding § 922(g)(1), stating that "the Supreme Court clearly emphasized that recent developments in Second Amendment jurisprudence should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* (citing *Heller*, 554 U.S. at 626; *McDonald*, 561 U.S. at 786). Moreover, nothing in *Bruen*'s majority opinion suggests that it intended to abrogate or cabin those cases in any fashion. In fact, *Bruen* emphasizes that it is endorsing and reasserting the reasoning in *Heller* and *McDonald*. *See e.g., Bruen*, 597 U.S. at 8–9 ("In … *Heller* … and *McDonald*, we recognized that the Second and Fourteenth Amendments protect the right of an **ordinary, law-abiding citizen** to possess a handgun in the home for self-defense"); 10 ("We too agree, and now hold, **consistent with *Heller* and *McDonald***, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home") (emphases added). *Bruen* did not disturb the precedents upon which *Bogle* relies and *Bogle* therefore remains binding upon this Court. The Court again joins the chorus of other district courts in this Circuit which have so held.[4] *See United States v. Gaskin*, No. 3:22-CR-98 (SRU), 2024 WL 381009, at *4 (D. Conn. Feb. 1, 2024) ("This Court remains bound under *Bogle* to hold that Section 922(g)(1) is constitutional"); *United States v. Hairston*, No. 3:23-CR-00020-SVN, 2024 WL 326667, at *4 (D. Conn. Jan. 29, 2024) (finding § 922(g)(1) constitutional because "*Bogle* remains good law after

---

[3] *United States v. Duarte*, 101 F.4th 657 (9th Cir.), *reh'g en banc granted, opinion vacated*, 108 F.4th 786 (9th Cir. 2024); *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023), *cert. granted, judgment vacated sub nom. Garland v. Range*, No. 23-374, 2024 WL 3259661 (U.S. July 2, 2024); *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), *cert. granted, judgment vacated*, No. 23-376, 2024 WL 3259662 (U.S. July 2, 2024).
[4] Because the Court is bound under *Bogle* to find § 922(g)(1) constitutional on its face, the Court does not undertake the historical analysis required under *Bruen* for assessing Second Amendment challenges to firearm regulations.

*Bruen*”); *United States v. Jakups*, No. 3:21-CR-00216 (VAB), 2024 WL 361428, at *3 (D. Conn. Jan. 31, 2024) (same) (collecting cases).[5]

Notwithstanding, Carter argues that *Rahimi* lends further support to his argument insofar as the Supreme Court rejected the government's argument that an individual may be disarmed if he is deemed not "responsible." Def.'s Mem. in Supp. at 8–9 (citing *Rahimi*, 144 S. Ct. at 1903). The Court disagrees.  If anything, *Rahimi* re-affirms the notion that neither *Heller* nor *McDonald* are undermined by *Bruen* and that whether the prohibition relates to a convicted felon, or someone otherwise deemed a danger to others, the Second Amendment is no bar to disarming such a person. The *Rahimi* Court first reinforced its earlier holding.  "[W]e do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Rahimi*, 144 S. Ct. at 1901 (citing *Heller* 554 U.S. at 626).  And when Rahimi argued that *Heller* precluded any regulation that prohibited possession of firearms in the home, the Court rejected the argument: "But *Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'"  *Id.* at 1902 (quoting *Heller,* 554 U.S. at 626, 627, n.26). Since *Rahimi,* no district court in this circuit has abandoned *Bogle* or held that § 922(g)(1) is unconstitutional. *See United States v. Ayala*, No. 22-CR-282 (VSB), 2024 WL 3376083, at *5 (S.D.N.Y. July 11, 2024) ("… the Supreme Court's holding [in *Rahimi*] makes clear that *Heller* and *McDonald*, still apply post-*Bruen*."); *United States v. Morales*, No. 24 CR. 84 (PAE), 2024 WL 3345982, at *2 (S.D.N.Y. July 8, 2024) ("[T]he

---

[5] Carter points the Court to cases in the Ninth, Third, and Fifth Circuits that have "thoroughly reviewed the historical record and found § 922(g)(1) unconstitutional as applied to specific individuals" under *Bruen*. Def.'s Mem. at 2. As *Bogle* remains binding Second Circuit precedent, the Court does not address these cases.

handful of courts to have addressed the constitutionality of § 922(g)(1) in the two and a half weeks since *Rahimi* issued have recognized that *Rahimi*, if anything, bolsters § 922(g)(1)'s constitutionality." (collecting cases)); *United States v. Young*, No. 20-CR-391 (RA), 2024 WL 3184709, at *4 (S.D.N.Y. June 25, 2024) ("Given that *Heller* and *McDonald* still apply in full force after *Bruen* and *Rahimi*, *Bogle* remains binding precedent within this Circuit on the constitutionality of section 922(g)." (internal citations omitted)).

Carter's further reliance on *Antonyuk v. Chiumento*, in which the Second Circuit stated that "[f]ourteen years after *Heller* and twelve years after *McDonald*, the Supreme Court decided *Bruen*, abrogating our circuit precedent, [including] the general approach we took to Second Amendment claims," is misplaced. 89 F.4th 271 (2d Cir. 2023), *cert. granted, judgment vacated sub nom. Antonyuk v. James*, No. 23-910, 2024 WL 3259671 (U.S. July 2, 2024). Carter argues that *Antonyuk* "plainly requires this Court to apply the two-step *Bruen* test set forth by the Supreme Court," and that this Court "cannot short-circuit that analysis by relying on now-abrogated precedent[]." Def.'s Reply at 3. *Antonyuk* dealt with a challenge to New York's Concealed Carry Improvement Act ("CCIA"), based primarily on the Second Amendment. 89 F.4th at 289. In *Antonyuk* the Second Circuit upheld the CCIA's "good moral character" requirement, holding that "there is widespread consensus… that restrictions which prevent dangerous individuals from wielding lethal weapons are part of the nation's tradition of firearm regulation," and noting that in both *Heller* and *Bruen* the Supreme Court "admonished that the Second Amendment protects the rights of law-abiding and responsible citizens[.]" *Id.* at 314. As one district court has recently held, "*Antonyuk* confirms only that the means-end framework previously used by the Second Circuit is no longer valid and, in fact, offers further support for the proposition that *Bruen* did not overturn *Bogle*." *United States v. Hairston,* No. 3:23-CR-00020-SVN, 2024 WL 326667, at *4 (D. Conn.

Jan. 29, 2024) The Court agrees. As discussed above, *Bogle* did not employ the means-end framework and relied exclusively on *Heller* and *McDonald*.

Carter's as-applied challenge to the statute also fails. Courts in this Circuit have rejected the need to consider constitutional challenges to § 922(g)(1) based upon the nature of the defendants' underlying felony convictions. *See United States v. Mingues*, No. 5:23-CR-81 (BKS), 2023 WL 9604697, at *6 (N.D.N.Y. Dec. 23, 2023) ("with specific regard to § 922(g)(1), there is no precedent requiring the Court 'to conduct an individualized inquiry by felony'" (quoting *United States v. Mitchell*, No. 1:23-CR-00198 (ALC), 2023 WL 8006344, at *7 (S.D.N.Y. Nov. 17, 2023); *Hairston*, 2024 WL 326667, at *7 ("Nothing in *Bogle* or *Bruen* suggest that as-applied challenges, or a felony-by-felony individualized inquiry, is required."). And although the Second Circuit has yet to rule on the question of as-applied challenges to § 922(g)(1), district courts within the Circuit have found decisions from the Eighth and Tenth Circuits persuasive which "have concluded that there is no basis to draw distinctions under § 922(g)(1) based on the underlying felony conviction." *United States v. Crawford*, No. 23 CRIM. 566 (LGS), 2024 WL 1657879, at *5 (S.D.N.Y. Apr. 17, 2024) (citing *Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023), *cert. granted, judgment vacated*, No. 23-683, 2024 WL 3259668 (U.S. July 2, 2024); *United States v. Jackson*, 69 F.4th 495, 505–06 (8th Cir. 2023), *cert. granted, judgment vacated,* No. 23-6170, 2024 WL 3259675 (U.S. July 2, 2024)).

Further, when a statute is challenged as-applied, the court must analyze "the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). Here, Carter does not present any argument that the circumstances under which he is alleged to have possessed the firearms (using one to beat a person

in a convenience store and thereafter fleeing with and discarding two guns from the window of his moving vehicle) somehow implicate his constitutionally protected rights. Relatedly, as in *Hairston*, "[Defendant] makes no distinct arguments about his prior convictions that support an as-applied challenge, despite framing his argument as such. For instance, [Defendant] has supplied no facts about the circumstances of his underlying felony convictions; the only information available to the Court is the specific charges identified in the indictment[.]" 2024 WL 326667 at *7. The insufficiently developed record on this issue requires the Court to reject Carter's as-applied challenge. *Id.*; *see also United States v. Baker*, No. 23-CR-6087CJS, 2023 WL 5511343, at *4 (W.D.N.Y. July 12, 2023) (collecting cases).

**Conclusion**

For the reasons stated above, the Court rejects Carter's facial and as-applied constitutional challenges to § 922(g)(1). Accordingly, the motion to dismiss the Indictment is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 13th day of August 2024.

  /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE